UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHAWN THOMAS,

Plaintiff,

-against-

THE CITY OF NEW YORK, COMMISSIONER
DANIEL A. NIGRO, WILLIAM SEELIG,
STEPHEN GERAGHTY, DONALD HAYDE,
JOHN SPILLANE, JOHN ESPOSITO, JOSEPH
CUNNINGHAM, JOSEPH DOWNEY, JAMES
ELLISON, THOMAS GARDNER, EDWARD
COWAN, WILLIAM BEDELL, JOHN DOE, and
JANE DOE,

Defendants.

**MEMORANDUM & ORDER**

**19-CV-4791 (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Shawn Thomas brought this action against Defendants the City of New York ("City"), Commissioner Daniel A. Nigro, William Seelig, Stephen Geraghty, Donald Hayde, John Spillane, John Espsito, Joseph Cunningham, Joseph Downey, James Ellison, Thomas Gardner, Edward Cowan, William Bedell, John Doe, and Jane Doe for race discrimination and retaliation pursuant to federal and state law. (*See generally* Complaint ("Compl.") (Dkt. 1); Amended Complaint ("Am. Compl.") (Dkt. 27).) The parties reached a settlement on September 30, 2021, (Sealed Stipulation of Settlement ("Settlement Agr.") (Dkt. 108-1 at ECF pp. 5-10), and the court ordered dismissal of this case with prejudice on November 16, 2021, but retained jurisdiction over enforcement of the settlement agreement, (Stipulation and Order of Dismissal ("Stip. & Dismissal Order") (Dkt. 81) ¶ 2). The City now brings this fully-briefed motion to enforce the Settlement Agreement. (City's Sealed Motion to Enforce Terms of Settlement Agreement ("Mot.") (Dkt. 109); Pl.'s Sealed Opp'n to

Mot. ("Opp'n.") (Dkt. 110); City's Sealed Reply ("Reply") (Dkt. 112).) The court referred the City's motion to Chief Magistrate Judge Vera M. Scanlon for a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b)(1) of the Federal Rules of Civil Procedure. (*See* Jan. 10, 2025 Order Referring Mot.) Judge Scanlon issued the annexed R&R on August 15, 2025, recommending that the court deny the City's motion to enforce the settlement agreement. (R&R (Dkt. 118) at 1.) The court granted the City's first request for an extension of time to file its objection the R&R, (Text Order Dated Aug. 21, 2025 (extending deadline to September 15, 2025)), and denied the City' second request for an extension of time, (Text Order Dated Sept. 12, 2025). The City timely objected to the R&R. (*See generally* City's Objs. to R&R (Dkt. 123).) Plaintiff did not object to the R&R.

For the reasons set forth below, the court OVERRULES the City's objections to the R&R and ADOPTS the R&R. The City's motion is DENIED.

## I.   BACKGROUND[1]

Plaintiff is employed as a firefighter for the New York City Fire Department ("FDNY") and was employed as an FDNY firefighter for all periods relevant to the instant motion.

Plaintiff brought this racial discrimination and retaliation action on August 20, 2019. (*See generally* Compl.; Am. Compl.) The parties executed a stipulation settling the action on September 30,

---

[1] As the parties have not objected to the procedural background as outlined in the R&R, the court refers to the R&R for the case's complete procedural history. (*See* R&R at 2.) *Raysor v. United States*, No. 3-CV-5418 (SLT) (JMA), 2014 WL 4658972, at *7 (E.D.N.Y. Sept. 17, 2014) ("A district court . . . is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed.").

2021. (Settlement Agr.) (including terms concerning monetary settlement, ██████████████████, cooling off period, and execution and effect of agreement).) The Settlement Agreement provides that the City would pay Plaintiff ████████ in exchange for withdrawal, dismissal, and release of all claims against the City. (*Id.* ¶ 2.)



With regard to execution and effect of the Settlement Agreement, the parties agreed that Plaintiff would deliver to counsel for the City "all documents necessary to effect this settlement, including, without limitation, a General Release, based on paragraph '2' above [concerning monetary terms of the settlement], IRS Form W-9, and an Affidavit of Status of Liens." (*Id.* ¶ 6.) The Settlement Agreement also contains a merger and integration clause. (*See id.* ¶ 10.)

On or about October 21, 2021, Plaintiff was promoted to Captain. (Sealed Affidavit of Shawn Thomas ("Thomas Decl.") (Dkt. 111) ¶ 7.)

The court entered an order dismissing the action with prejudice on November 16, 2021. (Stip. & Dismissal Order ¶ 2 ("[T]he District Court shall continue to retain jurisdiction over this action for the purpose of enforcing the terms of the settlement agreement reached between the parties and set forth in the Stipulation of Settlement executed by the parties in this matter.").) After the parties executed the Settlement Agreement, Plaintiff provided the City's attorneys with the executed "General Release, an Affidavit of No Liens, and the necessary W-9 forms." (Thomas Decl. ¶ 1.) In December 2021, the City paid Plaintiff the settlement amount ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

On April 8, 2022, the FDNY sent Plaintiff a proposed Stipulation and Agreement (the "Proposed Stipulation" or "Proposed Stip.") for his signature. (Thomas Decl. ¶ 11.) The Proposed Stipulation contained new release and waiver language, and extended the covered release period by over seven months from the time Plaintiff executed the General Release. (*See* Proposed Stip. (Dkt. 111 at ECF pp. 25-28) ¶¶ 9, 11.) Plaintiff never signed the Proposed Stipulation. (*See* Thomas Decl. ¶ 11 ("I did not sign the [Proposed] Stipulation as I believed that the charges had been settled.").)

On May 22, 2023, Plaintiff brought a separate action against the City and other defendants alleging that they wrongfully extended the one-year probationary period associated with this promotion to Captain and withheld tenure for discriminatory and retaliatory reasons. (*See generally* Complaint, *Thomas v. The City of New York et al.*, No. 23-CV-3761 (AMD) (SDE) (E.D.N.Y. May 22, 2023) (Dkt. 1) ("*Thomas II*").) In *Thomas II*, the City moved to stay discovery pending the outcome of the instant motion, arguing that

4

an order from this court compelling Plaintiff to execute the Proposed Stipulation would preclude Plaintiff's claims in *Thomas II*. (*See* City's Mot. to Stay Disc., *Thomas II*, (E.D.N.Y. Aug. 30, 2024) (Dkt. 63) at 2.) Plaintiff opposed the City's motion, and the City replied. (Pl.'s Opp'n to City's Mot. to Stay Disc., *Thomas II*, (E.D.N.Y. Oct. 24, 2024) (Dkt. 78); City's Reply in Supp. of Mot. to Stay Disc., *Thomas II*, (E.D.N.Y. Nov. 11, 2024) (Dkt. 81).)

Pending before this court is the City's fully-briefed motion to enforce the Settlement Agreement. (*See* Mot.; Opp'n; Reply.)

## II.  LEGAL STANDARD

Claims to enforce settlement agreements "require [their] own basis for jurisdiction." *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015).[2] That jurisdiction may be found in the doctrine of "ancillary jurisdiction," which permits courts to decide matters that are "factually interdependent" with another matter before the court or to "take actions necessary 'to manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Id.* (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80 (1994)). A district court can only retain ancillary jurisdiction over enforcement of a settlement agreement where the court's order of dismissal: "(1) expressly retain[s] jurisdiction over the settlement agreement, or (2) incorporate[s] the terms of the settlement agreement in the order." *Id.*

Motions to enforce settlement agreements are "fundamentally. . . claim[s] for breach of a contract, part of the consideration of which was dismissal of an earlier federal suit." *Id.* Although it is an open question in Second Circuit whether New York or federal common law controls disputes over a parties' settlement in cases where the court's jurisdiction rests on a federal question, *Oparah*

---

[2] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

*v. The New York City Dep't of Educ.*, No. 12-CV-8347 (JGK) (SN), 2015 WL 4240733, at *5 (S.D.N.Y. July 10, 2015), the Second Circuit has noted that "there is no material difference between the applicable state law or federal common law standard" in determining the enforceability of settlement agreements, *see Ciaramella v. Reader's Dig. Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997). "'A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.'" *Dongguan Fengshang Indus. Co. v. Soho Partners Grp.*, LLC, 761 F. Supp. 3d 691, 694 (S.D.N.Y. 2025) (quoting *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (N.Y. 2002)). The elements of a breach of contract claim under New York law are: (1) "the existence of a contract"; (2) "the [movant's] performance under the contract"; (3) "the [non-movant's] breach of [his] obligations under the contract"; and (4) "damages resulting from [the non-movant's] breach." *See Hausen v. N. Fork Radiology, P.C.*, 171 A.D.3d 888, 892 (2d Dep't 2019). Courts "may not by construction add or excise terms" of a written contract, nor can they "distort the meaning of those [terms] used" within the contract because such an action would impermissibly "make a new contract for the parties under the guise of interpreting the writing." *Magtoles v. United Staffing Registry, Inc.*, 665 F. Supp. 3d 326, 353 (E.D.N.Y. 2023).

Finally, when parties submit timely objections to a report and recommendation, the court reviews *de novo* those parts of the report and recommendation to which the parties object. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Upon *de novo* review, the court "may accept, reject, or modify, in whole or in part," the magistrate judge's findings. 28 U.S.C. § 636(b)(1).

## III. DISCUSSION

When the court ordered dismissal of this case, the court expressly "retain[ed] jurisdiction over this action for the purpose of enforcing the terms of the [S]ettlement [A]agreement." (Stip. &

Dismissal Order ¶ 2.) The court exercises that jurisdiction in resolving the City's motion to enforce the Settlement Agreement. *See Hendrickson*, 791 F.3d at 358.

The court applies New York law to the City's motion because "there is no material difference between the applicable state law or federal common law standard" in determining the enforceability of settlement agreements, *Ciaramella*, 131 F.3d at 322, and courts within this Circuit "apply New York and federal common law interchangeably," *Sprint Commc'ns Co. L.P. v. Jasco Trading, Inc.*, 5 F. Supp. 3d 323, 328 (E.D.N.Y. 2014) (collecting cases).

### A. Existence of a contract

It is undisputed that the parties entered into a contract to settle all of Plaintiff's claims against the City, establishing the first element of a breach of contract claim. (*See generally* Settlement Agr.)

### B. City's performance under the Settlement Agreement

Judge Scanlon identified seven obligations that the City had under the Settlement Agreement. (R&R at 5-6). Judge Scanlon noted that the Settlement Agreement:

> (1) obligated [the City] to pay        to Plaintiff; (2) provided that Plaintiff's eligibility for promotion to a captain position, or for other promotions or advancements, would be unaffected by
> (3) provided that the FDNY had no other disciplinary charges pending against Plaintiff, other than those charges to which Plaintiff agreed to plead guilty, and that the FDNY did not anticipate bringing further disciplinary charges against Plaintiff for known acts or omissions; (4) limited the FDNY's disclosure and publication of "any information related to            set forth in this agreement" to "the ordinary course and . . . consistent with

its policies practices, City policy and directive, and legal ob-
ligations or any other obligations," with further notes that
Plaintiff would █████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████ (5) provided that Plaintiff
would "be assigned as a covering Lieutenant in Division 11,
where he currently serves," and would "not be detailed,
transferred, or re-[]assigned, nor denied transfer, assign-
ment, or re-assignment, to a different position as a result of
this litigation and ███████ (6) provided that any request
for transfer to a position on Staten Island by Plaintiff would
"be considered in the ordinary course in a manner consistent
with FDNY policies, practices, and operational grounds"; and
(7) obligated [the City's] counsel to "make best efforts to
transmit the relevant settlement documents to the New York
City Comptroller's Office for processing within five (5) days
of receipt by the City's counsel of the fully-executed docu-
ments necessary to effect this settlement."

(*Id.* (citing and quoting Settlement Agr. ¶¶ 2, 3, 7).) As the par-
ties do not dispute that the City performed its obligations under
the Settlement Agreement, (*id.* at 6), the City has established the
second element of a breach of contract claim.

## C. Plaintiff's alleged breach of the Settlement Agreement

Judge Scanlon identified five obligations that Plaintiff had under
the Settlement Agreement. (*Id.* at 6-7). Judge Scanlon noted that
the Settlement Agreement:

(1) obligated Plaintiff "to withdraw[] and dismiss[] . . . all
the claims against [D]efendant City of New York and to re-
lease [D]efendant" and related entities and persons "from

8

any and all liability, claims, or rights of action based on any act, omission, event or occurrence occurring from the beginning of the world up through and including" September 30, 2021; █████████████████████

███████████████████████████████

██████████████████████ (4) provided that "Plaintiff shall not be eligible to apply for any FDNY's Special Operations Command ('SOC') position until May 2, 2023, a period of thirty-six (36) months from [P]laintiff's detail out of SOC on May 2, 2020"; and (5) provided that "Plaintiff shall execute and deliver to the City of New York's attorney (either by overnight delivery or email) at 100 Church Street, New York, New York 10007[,] all documents necessary to effect this settlement, including, without limitation, a General Release, based on the terms of paragraph '2' above,  IRS Form W-9, and an Affidavit of Status of Liens."

(*Id.* (citing and quoting Settlement Agr. ¶¶ 2, 3, 4, 6).) Judge Scanlon correctly reasoned that Plaintiff performed the first, third, and fourth obligations, but the parties dispute whether Plaintiff performed the second and fifth obligation. (*See id.* at 7.) Judge Scanlon concluded that: (1) the "[Settlement] Agreement does not expressly require that Plaintiff would need to execute the [Proposed] Stipulation to ███████████ (2) "the FDNY policies purportedly requiring the execution of the Stipulation to ███████ are not incorporated by reference into the [Settlement] Agreement"; (3) "the [Proposed] Stipulation contains terms that appear to contradict or impose additional obligations beyond those in the [Settlement] Agreement, such that the terms of the [Proposed] Stipulation are inconsistent with the parties' intent as memorialized in the [Settlement] Agreement"; and (4) "the settlement payment was issued to Plaintiff prior to Defendant's April 8, 2022, request for Plaintiff to execute the [Proposed]

9

Stipulation, signifying Defendant's understanding that the parties' obligations under the [Settlement] Agreement were completed because payment was to proceed after receipt of all necessary documents to effectuate the settlement." (*Id.* at 9.) The City objects to each of these conclusions. (*See* City's Objs. to R&R at 2-4, 5-9.) The court finds the City's objections unavailing, and addresses each one in turn.

> 1. Settlement Agreement's express requirements regarding ▮▮▮▮

"The interpretation of a written agreement begins with an examination of its language." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 970 F.2d 1132, 1136-37 (2d Cir. 1992) ("When an agreement is clear and unambiguous, courts will generally not consider extrinsic evidence of its meaning.").



Judge Scanlon reasoned that "[i]mposing upon Plaintiff a new obligation, not contained in the [Settlement] Agreement, to execute the [Proposed] Stipulation, which is an entirely separate agreement, in order to ▮▮▮▮ would be an impermissible addition of a term not contained therein." (R&R at 10.) The City's argument that "it only makes sense, and is realistic, that a memorialization of ▮▮▮▮ [via execution of the Proposed Stipulation] was necessary to finalize the same" presents Plaintiff's obligation to sign the [Proposed] Stipulation as implied by the Settlement Agreement's terms. (*See*

10

City's Objs. to R&R at 3.) However, "[a]n implied obligation cannot 'add to the contract a substantive provision not included by the parties.'" *Design Partners, Inc. v. Five Star Elec. Corp.*, No. 12-CV-2949 (PKC), 2018 WL 3636700, at *16 (E.D.N.Y. Feb. 24, 2018) (quoting *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005)). Accordingly, the court overrules the City's objection and finds that the Settlement Agreement does not expressly require that Plaintiff execute the Proposed Stipulation.

### 2. Application of FDNY policies

"Under New York law, 'the doctrine of incorporation by reference requires that the paper to be incorporated into the written instrument by reference must be so described in the instrument that the paper may be identified beyond all reasonable doubt.'" *Valley Stream Foreign Cars, Inc. v. Am. Honda Motor Co.*, 209 F. Supp. 3d 547, 552-53 (E.D.N.Y. 2016) (quoting *Kenner v. Avis Rent A Car Sys., Inc.*, 254 A.D.2d 704, 704 (4th Dep't 1998)).

The City argues that by deciding not to sign the Proposed Stipulation, Plaintiff violated the Settlement Agreement because "[u]nder the rules and procedures of FDNY, ███████████████

████████████████████████████

████████████████████████████ The

court rejects the City's assertion that "it is of no consequence that FDNY rules and procedures requiring a stipulation to be signed were not referenced in the parties' settlement agreement." (*See* City's Objs. to R&R at 5.) "Here, the [FDNY rules and procedures are] not identified or described in the [Settlement] Agreement beyond all reasonable doubt." *Valley Stream Foreign Cars, Inc.*, 209 F. Supp. at 553. To the contrary—they are completely absent.

11

The City's interpretation of the word *"shall"* in paragraph 3 of the Settlement Agreement cannot displace the well-established principle that "a party [to an agreement] will not be bound to the terms of any [separate] document[s] unless [those documents are] clearly identified in the agreement." (*See* City's Objs. to R&R at 4.) *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996). Because the parties did not incorporate the "rules and procedures of FDNY" (Mot. at 2) into the Settlement Agreement—nor does the City specify the "rules and procedures" it purports to reference in its briefing on the instant motion—the court may not refashion the contract to include those policies, nor consider them to conclude that Plaintiff violated the Settlement Agreement. *See Weeks Marine, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n*, 511 Fed. Appx. 78, 80 (2d. Cir. 2013) ("Where the plain language of a contract is unambiguous, that language *alone* indicates the parties' intent") (summary order) (emphasis added). There was no meeting of the minds as to the application of the FDNY's rules and procedures to Plaintiff's obligations under the Settlement Agreement. And the Settlement Agreement's merger and integration clause expressly forecloses modification of the Settlement Agreement's written terms. (*See* Settlement Agr. ¶ 10.) *See Bozetarnik v. Mahland*, 195 F.3d 77, 83 (2d Cir. 1999) (stating that an integration clause "preclude[s] the incorporation into the contract of implied terms that are inconsistent with the contract"). Accordingly, the court overrules the City's objection and finds that the FDNY policies purportedly requiring the execution of the Proposed Stipulation are not incorporated by reference into the Settlement Agreement. They are therefore of no import to this court's construction of the Settlement Agreement.

### 3. Conflicts between the Settlement Agreement and Proposed Stipulation

The New York Court of Appeals has made clear that "[n]o obligation can be implied . . . which would be inconsistent with other

terms of the contractual relationship." *Murphy v. Am. Home Prods. Corp.,* 58 N.Y.2d 293, 304 (N.Y. 1983). Because the court has already concluded that the Settlement Agreement does not expressly require that Plaintiff execute the Proposed Stipulation, *see supra* Part III.C.1, the court now examines the terms of the Settlement Agreement and the terms of the Proposed Stipulation to determine whether Plaintiff had an implied obligation under the Settlement Agreement to agree to the terms of the Proposed Stipulation.

There are material differences between the terms of the Settlement Agreement and the terms of the Proposed Stipulation. As to the distribution and availability of information regarding Plaintiff's ▮▮▮▮▮▮▮▮▮▮, the Settlement Agreement provides that the "FDNY will only disclose and/or publish any information related to [P]laintiff's disciplinary plea set forth in this agreement in the ordinary course and in a manner consistent with its policies, practices, City policy and directive, and legal obligations or any other obligations." (Settlement Agr. ¶ 3(D).) The City also agreed that: (1) Plaintiff would "not be identified by name" and instead ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ However, the Proposed Stipulation provides "that executed copies of this Stipulation and Agreement will be distributed to the Chief of Department, the Chief of Operations, the Chief of Uniformed Personnel, Lieutenant Thomas's Borough Commander, Commanding Officer, union representative and/or attorney." (Proposed Stip. ¶¶ 12, 13 ("[A] copy of this Stipulation and Agreement shall be included in Lieutenant Thomas's personnel and ▮▮▮▮▮▮▮▮ maintained by the Department in accordance with existing Department Rules and Regulations.").) Judge Scanlon correctly concluded that the "confidentiality provisions

13

in the [Settlement] Agreement afford specific protections to Plaintiff, including anonymization in certain contexts, that are not coextensive with the more general provisions in the [Proposed] Stipulation pertaining to the distribution and availability of the [Proposed] Stipulation." (R&R at 13.) The City's argument that the distribution provision in the Proposed Stipulation "does not contradict" the Settlement Agreement's distribution provision because the recipients identified within the Proposed Stipulation are individuals who would have already received notice of the settlement "within the ordinary course and in a manner consistent with FDNY policies and practices" is unpersuasive. (City's Objs. to R&R at 7.) If, as the City argues, the individuals that would receive notice of the settlement under the Proposed Stipulation would have already been notified under the "ordinary course and in a manner consistent with" FDNY's policies pursuant to the Settlement Agreement, (*see* Settlement Agr. ¶ 3(D); City's Objs. to R&R at 7-8), the City has not explained why it decided to now enumerate those recipients as part of the Proposed Stipulation. *See Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap., Inc.*, 30 N.Y.3d 572, 581 (N.Y. 2017) ("[A] contract must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect.")

The waiver provisions of the Proposed Stipulation also materially differ from the waiver provision of the Settlement Agreement. Whereas the Settlement Agreement contains Plaintiff's release of "any and all liability, claims, or rights of action based on any act, omission, event or occurrence occurring from the beginning of the world up through and including the date hereof," namely September 30, 2021, (Settlement Agr. ¶ 2), the Proposed Stipulation's waiver provisions do not include an end date, (*see* Proposed Stip. ¶¶ 9, 11). The Proposed Stipulation's waivers would therefore likely be effective until the date when Plaintiff executes the Proposed Stipulation, which would have been, at

14

the earliest, April 8, 2022, when the City provided the Proposed Stipulation to Plaintiff for his signature. (*See* R&R at 12 ("The [Settlement] Agreement does not contemplate the requirement that Plaintiff waive claims for nearly seven additional months beyond the waiver in the [Settlement] Agreement.").) The Proposed Stipulation's waiver provisions are also more expansive than the Settlement Agreement's waiver. (*Compare* Settlement Agr. ¶ 2 (waiving "any and all liability, claims, or rights of action based on any act, omission, event or occurrence") *with* Proposed Stip. ¶ 9 (waiving Plaintiff's rights to commence or continue "any judicial or administrative proceedings or appeal" brought pursuant to federal anti-discrimination law and to "to contest the authority and jurisdiction of the Fire Department to impose the terms and conditions which are embodied in this Stipulation and Agreement") ¶ 11 (waiving all claims against the City arising under federal, state, and city law "with respect to the matters addressed in this Stipulation and Agreement").) Judge Scanlon correctly concluded that the "disparities between the terms of the [Settlement] Agreement and the terms of the [Proposed] Stipulation evidence that Plaintiff and Defendant did not have a meeting of the minds as to the terms of the [Proposed] Stipulation." (R&R at 13.) The court overrules the City's objection to Judge Scanlon's conclusion that the Proposed Stipulation imposes additional or contradictory terms to the Settlement Agreement.

### 4.  City's payment

The City argues that its payment of the settlement amount to Plaintiff is not an indication that the settlement was final because the "plain language" of the Settlement Agreement "does not preclude the City from transmitting additional documents to the Comptroller's Office that were clearly encompassed within the settlement agreement once signed by Plaintiff." (City's Objs. to R&R at 9.) This argument is unavailing.

The Settlement Agreement required Plaintiff to execute and deliver to the City's counsel "all documents necessary to effect this settlement, including, without limitation, a General Release, based on the terms of paragraph '2' above, IRS Form W-9, and an Affidavit of Status of Liens." (Settlement Agr. ¶ 6.) Upon receipt of these documents, the City promised to "transmit the relevant settlement documents to the New York City Comptroller's Office for processing within five (5) days of receipt by the City's counsel of the fully-executed documents necessary to effect this settlement." (*Id.* ¶ 7.) Plaintiff submitted the requisite documents described in paragraph 6 of the Settlement Agreement, and the City issued payment to Plaintiff in December 2021. (*See* Thomas Decl. ¶¶ 2-3.)

Judge Scanlon correctly reasoned that when the City issued the payment of the settlement amount to Plaintiff in December 2021, (*see id.*), the City recognized that it "was in receipt of all documents necessary to effect the settlement." (*See* R&R at 14 ("For Defendant, on April 8, 2022, to then take the position that the [Proposed] Stipulation was necessary to effect the settlement is inconsistent with Defendant's course of performance of the [Settlement] Agreement.").) *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 748 (2d Cir. 1998) ("Additional evidence favoring plaintiff's position on contract formation can be found in the preparatory steps the parties took for performance under the alleged agreement"); *Gonzalez v. Jurella*, No. 14-CV-1250 (AWT), 2015 WL 9943596, at * 5 (D. Conn. Sept. 22, 2015) ("The fact that certain ministerial tasks remained to be completed also does not undermine the Court's finding that the agreement was concluded . . . Parties routinely enter into settlement agreements that are binding on all concerned although the final exchange of releases and payments has not yet been made. All indications are that the parties intended to enter into a final, binding agreement."). The court overrules the City's objection that Judge Scanlon erred in concluding that the City's payment

of the settlement amount obviated the need for Plaintiff to execute the Proposed Stipulation.

In sum, the City has not proven that Plaintiff breached his obligations under the Settlement Agreement: (1) the Settlement Agreement did not expressly require the execution of a ▮▮▮▮▮ ▮▮▮▮▮▮ (2) such a procedure was not incorporated by reference to any FDNY policies; (3) the Proposed Stipulation contains conflicting and additional provisions from the Settlement Agreement that undercuts the City's argument that the Settlement Agreement included an implied obligation to assent to them; and (4) the City's payment established a course of performance consistent with the plain language and intent of the Settlement Agreement—it cannot now take positions inconsistent with that performance.

While such a failure to prove breach renders the City's enforcement action inert, the court nevertheless explains why the City's damages claim also fails.

### D. City's damages

The City has not proven, or even alleged, damages from Thomas's alleged breach. Prior to filing its objections to the R&R, the City had not attempted to make a showing that it suffered damages because of Plaintiff's alleged breach of the Settlement Agreement. (*See generally* Mot.; Reply.) Judge Scanlon highlighted this deficiency in her R&R. (*See* R&R at 14 ("Defendant has not offered any damages resulting from Plaintiff's alleged breach and has therefore not satisfied this element of the claim.").) In its objections to the R&R, the City now attempts to argue that it has had to unnecessarily expend resources to enforce the Settlement Agreement: "While Defendant apologizes if it may not have explicitly stated this in its underlying papers, Defendant submits that the mere fact that it moved to enforce the parties' settlement agreement and is now filing objections to the R&R which recommended a denial of that motion

is proof of the very damages it is claiming." (City's Objs. to R&R at 10.) However, this court "will not consider an argument that was not properly presented to the magistrate judge in the underlying motion papers and was instead raised for the first time in an objection." *Beni v. New York*, No. 18-CV-615 (JMA) (ARL), 2019 WL 4894243, at *1 (E.D.N.Y. Sept. 30, 2019); *accord Bell v. Pfizer Inc.*, No. 3-CV-9945 (KMW) (HBP), 2006 WL 2529762, at *1 (S.D.N.Y. Aug. 31, 2006) ("An objecting party may not raise new arguments that were not made before the Magistrate Judge."). Accordingly, the City has failed to establish the fourth element of a breach of contract claim concerning damages.

***

In sum, the City has failed to establish that: (1) Plaintiff is in breach of the Settlement Agreement by refusing to sign the Proposed Stipulation; and (2) the City suffered damages because of Plaintiff's alleged breach. Thus, the City's motion to enforce the Settlement Agreement fails.

## IV. CONCLUSION

For the foregoing reasons, the court OVERRULES the City's objections to the R&R and ADOPTS the R&R. The City's motion is DENIED.

SO ORDERED.

Dated:    Brooklyn, New York
          September 13, 2025

                                    s/Nicholas G. Garaufis

                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
SHAWN THOMAS,

                                        Plaintiffs,

             -against-

THE CITY OF NEW YORK, COMMISSIONER
DANIEL A. NIGRO, WILLIAM SEELIG,
STEPHEN GERAGHTY, DONALD HAYDE,
JOHN SPILLANE, JOHN ESPOSITO, JOSEPH
CUNNINGHAM, JOSEPH DOWNEY, JAMES
ELLISON, THOMAS GARDNER, EDWARD
COWAN, WILLIAM BEDELL, JOHN DOE, and
JANE DOE,

                                   Defendants.
-------------------------------------------------------------- x

**REPORT AND
RECOMMENDATION**

19 Civ. 4791 (NGG) (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

       Presently before the Court is the motion of Defendant The City of New York

("Defendant") against Plaintiff Shawn Thomas ("Plaintiff") to enforce the settlement agreement

entered into in this action (the "Agreement").[1]  <u>See generally</u> ECF Nos. 107-09.  Plaintiff

opposed the motion.  <u>See generally</u> ECF Nos. 110-11.  Defendant replied thereto.  <u>See generally</u>

ECF No. 112.  For the reasons discussed below, the Court respectfully recommends that the

motion be denied.

**I.     BACKGROUND**

       The Court assumes the parties' familiarity with the procedural history of this action,

which, prior to the termination of this action, is not of import to the motion presently before the

Court.  The Court briefly includes the relevant procedural history in order to contextualize the

motion.

---

[1] These are the only parties to the Agreement.  <u>See generally</u> ECF No. 108-1 at 5-10.

On August 20, 2019, Plaintiff commenced this action against Defendant, William Seelig, Stephen Geraghty, Donald Hayde, John Spillane, Joseph Cunningham, Joseph Downey and James Ellison, asserting claims arising from his employment with the New York City Fire Department (the "FDNY") for race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; 42 U.S.C. § 1981 and 42 U.S.C. § 1983; the New York State Human Rights Law, N.Y. Exec. L. §§ 290 et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq.  See generally ECF No. 1.  Plaintiff filed an amended complaint on May 21, 2020, which asserted the same claims as his original complaint and added as Defendants Commissioner Daniel A. Nigro, John Esposito, Thomas Gardner, Edward Cowan and William Bedell.

The Court held five settlement conferences with the parties, on September 30, 2020; on February 8, 2021; on March 25, 2021; on April 21, 2021; and on May 3, 2021.  See 9/30/2020 Dkt. Entry; 2/8/2021 Dkt. Entry; 3/25/2021 Dkt. Entry; 4/21/2021 Dkt. Entry; 5/7/2021 Dkt. Entry.  After the parties reached a settlement, see generally ECF No. 75, on November 17, 2021, the District Court so-ordered the parties' stipulation of dismissal with prejudice and retained jurisdiction over enforcement of the Agreement, see generally ECF No. 81.

On July 15, 2024, nearly three years later, Defendant filed a letter requesting leave to file a motion to enforce the Agreement, seeking to compel Plaintiff to execute a Stipulation and Agreement (the "Stipulation") to plead guilty to certain FDNY disciplinary charges, per the Agreement.  See generally ECF Nos. 87-87-1.  The District Court granted the request and set a briefing schedule for the motion, see 7/15/2024 Order, which the District Court referred to the undersigned for a report and recommendation.

## II.    DISCUSSION

A motion to enforce a settlement agreement is, at its core, "a claim for breach of a contract, part of the consideration of which was dismissal of an earlier federal suit." Hendrickson v. U.S., 791 F.3d 354, 358 (2d Cir. 2015) (citation & quotations omitted).[2, 3]  In order to grant the moving party's motion, or provide relief on its claim for breach of contract, therefore, a court must find "the existence of a contract, [the movant's] performance of its obligations under the contract, the failure of the [non-moving party] . . . to perform its obligations and damages resulting from the [non-moving party's] . . . breach." Dongguan Fenshang Indus. Co., 761 F. Supp. 3d at 694 (applying New York law on a motion to enforce a settlement agreement) (citation & quotations omitted).

In assessing a non-moving party's alleged breach, a court must, inter alia, determine that party's obligations pursuant to the agreement.  If a "written agreement . . . is complete, clear and unambiguous on its face," a court should enforce it in accordance with its plain meaning.  Id. (citation & quotations omitted); see Collins v. Harrison-Bode, 303 F.3d 429, 433 (2d Cir. 2003) (reviewing a decision on a motion to enforce a settlement agreement and stating that, "[u]nder

---

[2] Given this framework, a federal court's exercise of jurisdiction over such a claim for breach of contract "requires its own basis for jurisdiction," namely that the order of dismissal in the federal action either "expressly retain[s] jurisdiction over the settlement agreement" or "incorporate[s] the terms of the settlement agreement in the order." Hendrickson, 791 F.3d at 358 (citations & quotations omitted).  Given that the Order of dismissal in this action expressly retained jurisdiction over the enforcement of the Agreement, see generally ECF No. 81, the Court may properly exercise its jurisdiction in deciding the present motion.

[3] Whether application of "federal or state law in order to decide a motion to enforce a settlement" is appropriate "has not yet been resolved by the Second Circuit," but "the Second Circuit has noted that there is no material difference between New York law and federal common law on this issue." Dongguan Fengshang Indus. Co. v. Soho Partners Grp., 761 F. Supp. 3d 691, 694 n.3 (S.D.N.Y. 2025) (citations & quotations omitted).  Neither Plaintiff nor Defendant has engaged in an analysis of which law to apply.  Therefore, in rendering this decision, the Court has looked to the coextensive body of both federal and New York caselaw.

New York law, the question of ambiguity <u>vel</u> <u>non</u> must be determined from the face of the agreement, without reference to extrinsic evidence," and will be answered in the negative unless the contract language "is capable of more than one meaning when viewed objectively by a reasonable intelligent person who has examined the context of the entire integrated agreement" (footnote, citations & quotations omitted)).  If such an agreement is ambiguous, however, a court should consider extrinsic evidence presented by the parties to ascertain the meaning of the agreement.  <u>See</u> <u>Collins</u>, 303 F.3d at 434 (vacating "the district court's judgment . . . based on its determination that the [s]ettlement [a]greement [wa]s unambiguous" and remanding "the case to the district court to provide the parties an opportunity to present extrinsic evidence" as to the ambiguous portion of the agreement").

In assessing the non-moving party's potential breach, a court "may not, through [its] . . . interpretation of a contract, add or excise terms or distort the meaning of any particular words or phrases, thereby creating a new contract under the guise of interpreting the parties' own agreements."  <u>AT&T Corp. v. Atos IT Solutions and Servs., Inc.</u>, 708 F. Supp. 3d 385, 401 (S.D.N.Y. 2023) (citation & quotations omitted); <u>see</u> <u>Magtoles v. United Staffing Registry, Inc.</u>, 665 F. Supp. 3d 326, 353 (E.D.N.Y. 2023) (reasoning that "[c]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (citations & quotations omitted)); <u>Miller v. Syracuse Univ.</u>, 662 F. Supp. 3d 338, 362 (N.D.N.Y. 2023) (reasoning that, "[i]n adjudicating express contract claims, [a] court cannot supply a specific obligation the parties themselves did not spell out" (citation & quotations omitted)).

## A.    Whether Plaintiff And Defendant Have A Contract

Plaintiff and Defendant both executed the Agreement.  See ECF No. 108-1 at 5-10.

Neither Plaintiff nor Defendant disputes that they entered into a contract, namely the Agreement.

## B.    Whether Defendant Performed Its Obligations Under The Contract

The Agreement (1) obligated Defendant to pay ▮▮▮▮▮ to Plaintiff; (2) provided that

Plaintiff's eligibility for promotion to a captain position, or for other promotions or

advancements, would be unaffected by "this litigation, violation, plea and punishment"; (3)

provided that the FDNY had no other disciplinary charges pending against Plaintiff, other than

those charges to which Plaintiff agreed to plead guilty, and that the FDNY did not anticipate

bringing further disciplinary charges against Plaintiff for known acts or omissions; (4) limited

the FDNY's disclosure and publication of "any information related to ▮▮▮▮▮▮

▮▮ set forth in this agreement" to "the ordinary course and . . . consistent with its policies

practices, City policy and directive, and legal obligations or any other obligations," with further

notes that Plaintiff would ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ and that the FDNY would ▮▮▮▮

▮▮▮▮▮; (5) provided that Plaintiff would

"be assigned as a covering Lieutenant in Division 11, where he currently serves," and would "not

be detailed, transferred, or re-[]assigned, nor denied transfer, assignment, or re-assignment, to a

different position as a result of this litigation ▮▮▮▮▮ (6) provided that any request for

transfer to a position on Staten Island by Plaintiff would "be considered in the ordinary course in

a manner consistent with FDNY policies, practices, and operational grounds"; and (7) obligated

Defendant's counsel to "make best efforts to transmit the relevant settlement documents to the

New York City Comptroller's Office for processing within five (5) days of receipt by the City's counsel of the fully-executed documents necessary to effect this settlement."  ECF No. 108-1 at 6-7, 9.

Neither Plaintiff nor Defendant disputes that Defendant performed its obligations under the Agreement.

**C.    Whether Plaintiff Failed To Perform His Obligations Under The Contract**

The Agreement (1) obligated Plaintiff "to withdraw[] and dismiss[] . . . all the claims against [D]efendant City of New York and to release [D]efendant" and related entities and persons "from any and all liability, claims, or rights of action based on any act, omission, event or occurrence occurring from the beginning of the world up through and including" September 30, 2021; (2) provided that " ███████████████████████████████ ███████████████████████ (3) provided that " ███████████████████████████ ████████████████████████████████████████████ (4) provided that "Plaintiff shall not be eligible to apply for any FDNY's Special Operations Command ('SOC') position until May 2, 2023, a period of thirty-six (36) months from [P]laintiff's detail out of SOC on May 2, 2020"; and (5) provided that "Plaintiff shall execute and deliver to the City of New York's attorney (either by overnight delivery or email) at 100 Cburch Street, New York, New York 10007[,] all documents necessary to effect this settlement,

6

including, without limitation, a General Release, based on the terms of paragraph '2' above,[4] IRS

Form W-9, and an Affidavit of Status of Liens." Id. at 6, 9-10.

Neither Plaintiff nor Defendant disputes that Plaintiff performed the first, third, and

fourth obligations above, but Plaintiff and Defendant dispute whether Plaintiff performed the

second and fifth obligations above. See generally ECF Nos. 109, 110 & 112. This dispute forms

the basis for the present motion.

### 1.    Parties' Arguments

Defendant argues that Plaintiff has "failed to satisfy his contractual obligation to execute

the necessary FDNY Stipulation and Agreement pleading guilty to the disciplinary charges

pending against him, one of the clearly stated terms set forth in the Stipulation of Settlement."

ECF No. 109 at 7 (citation omitted). By extension, Defendant relies upon the declaration of

Joseph T. Palazzolo, II, Deputy Director of the FDNY's Bureau of Investigations and Trials, for

the proposition that, "[u]nder the rules and procedures of FDNY, employees who plead guilty to

disciplinary charges are required to sign a 'Stipulation and Agreement' to that effect," which is

therefore required here. ECF No. 108-3 ¶¶ 1, 6.

---

[4] The release, consistent with paragraph 2 of the Agreement, provides that Plaintiff agreed to release Defendant,

> its successors or assigns; and all past and present officials, employees, representatives, and agents of the City of New York or any entity represented by the Office of the Corporation Counsel, from any and all liability, claims, or rights of action based on any act, omission, event or occurrence occurring from the beginning of the world up through and including the date hereof, including, without limitation, any and all claims which were or could have been alleged by [P]laintiff in this action arising out of the events alleged in the complaint herein, including claims for costs, expenses, and attorneys' fees.

ECF No. 108-1 at 6, 11. The only difference between the provisions is that the general release defines "Releasees," whereas the provision in the Agreement does not do so. See id.

In response, Plaintiff contends that he has "complied with the terms of the [s]ettlement [a]greement and did not materially breach any of its terms," as ███████████████████████ ████████████████████████████████████████ . . . and . . . executed all necessary documents to effectuate the settlement."  ECF No. 110 at 14.  In support of this position, Plaintiff notes (1) that, ████████████████████████████ Plaintiff would not have been promoted to Captain," ███████████████████████████████████████████ (2) that, ████████████████████████████████████████████████ ██████████████████████████████████ █████████████████████████████ ███████████████████████████████████████████████ ███████████ ; (3) ███████████████████████████████████████ ████████████████████████████████████████████ until April 8, 2022, when Defendant did so; (4) ██████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████ ; and (5) that the document that Defendant seeks to have Plaintiff execute seeks to "impose new obligations on Plaintiff that were not agreed to by the parties."  Id. at 10, 14-16, 19 (citations omitted).

In reply, Defendant (1) does not address Plaintiff's first argument; (2) as to Plaintiff's second argument, argues ███████████████████████████████████ ████████████████████████████ ; (3) as to Plaintiff's third argument, argues that a delay in seeking to enforce the Agreement does not affect the enforceability of the

Agreement; (4) as to Plaintiff's fourth argument, argues that Plaintiff ██████████████████ ████████████████████████████████████ through a future act and "that Plaintiff is intimately familiar with the rules and regulations of the FDNY," such that "it is not a surprise to Plaintiff that FDNY documentation is necessary to finalize ████████████"; and (5) as to Plaintiff's fifth argument, argues that "the FDNY's Stipulation and Agreement . . . is merely the mechanism necessary to finalize ██████████████ agreed to by Plaintiff" and does not impose new terms.  ECF No. 112 at 4-8 (citations omitted).

     **2.**    **Analysis**

     The Agreement provides, as relevant here, that ██████████████████████████ ████████████████████████████████" that "Plaintiff shall execute and deliver to the City of New York's attorney . . . all documents necessary to effect this settlement," and that the Agreement "contains all the terms and conditions agreed upon by the parties hereto."  ECF No. 108-1 at 6, 9-10.  The Agreement does not expressly require that Plaintiff would need to execute the Stipulation ██████████y; the FDNY policies purportedly requiring the execution of the Stipulation ███████████ are not incorporated by reference into the Agreement; the Stipulation contains terms that appear to contradict or impose additional obligations beyond those in the Agreement, such that the terms of the Stipulation are inconsistent with the parties' intent as memorialized in the Agreement; and the settlement payment was issued to Plaintiff prior to Defendant's April 8, 2022, request for Plaintiff to execute the Stipulation, signifying Defendant's understanding that the parties' obligations under the Agreement were completed because payment was to proceed after receipt of all necessary documents to effectuate the settlement.  For these four reasons, the Agreement does not require Plaintiff to execute the

Stipulation ████████████████████████████████, such that the motion to enforce should be denied.

### a. No Express Requirement For Plaintiff To Execute The Stipulation In The Agreement

The Agreement does not expressly require Plaintiff to execute the Stipulation to ████ ██████████████████████████████ Rather, the Agreement simply states that ████████ █████████████████████████████████████████████████████" ECF No. 108-1 at 6. Imposing upon Plaintiff a new obligation, not contained in the Agreement, to execute the Stipulation, which is an entirely separate agreement, in order to ███████████ would be an impermissible addition of a term not contained therein. See AT&T Corp., 708 F. Supp. 3d at 401 (citation omitted); Magtoles, 665 F. Supp. 3d at 353 (citations omitted); Miller, 662 F. Supp. 3d at 362 (citation omitted).

### b. FDNY Policies Not Incorporated By Reference Into The Agreement

In addition to the purported requirement for Plaintiff to execute the Stipulation in order to ██████████ being absent from the Agreement, the FDNY policies that purportedly supply such requirement are not incorporated by reference into the Agreement. Even accepting Defendant's argument, based on the declaration of Joseph T. Palazzolo, II, Deputy Director of the FDNY's Bureau of Investigations and Trials, see ECF No. 108-3 ¶¶ 1, 6, that the FDNY's policies require the execution of the Stipulation █████████████████████████, any such policies are not incorporated by reference into the Agreement. See Valley Stream Foreign Cars, Inc. v. Am. Honda Motor Co., 209 F. Supp. 547, 552-53 (E.D.N.Y. 2016) (reasoning that, "[u]nder New York law, [t]he doctrine of incorporation by reference requires that the paper to be incorporated into the written instrument by reference must be so described in the instrument that

the paper may be identified by all reasonable doubt" (citations & quotations omitted)).  And, even if the FDNY's policies had been incorporated by reference into the Agreement, Defendant did not submit, and the declaration of Joseph T. Palazzolo, II, Deputy Director of the FDNY's Bureau of Investigations and Trials, does not contain, any information as to the FDNY's requirements, if any, for such the Stipulation.

### c.    The Stipulation Imposes Additional Or Contradictory Terms

The Stipulation presented to Plaintiff on April 8, 2022, for execution ███████████ ███████████████████████, per the Agreement, provides for, basic terms such as identification of ██████████████████████████████████████ ██████████████████, a jurisdictional provision, █████████████████████████ ██████████████.  <u>See</u> ECF No. 111 at 25-27.  The Stipulation also contains waivers, beyond that already agreed to by Plaintiff in the Agreement, and provides for distribution and availability of the executed Stipulation to various personnel in the FDNY and for its inclusion in Plaintiff's personnel and ██████████████, which were not included in the Agreement.  <u>See</u> ECF No. 111 at 26-27.

As to the waivers, the first waiver in paragraph 9 of the Stipulation provides that Plaintiff

understands this Stipulation and Agreement constitutes a waiver by Lieutenant Thomas and he is hereby estopped from commencing or continuing any judicial or administrative proceedings or appeal, before any court of competent jurisdiction, administrative tribunal, including not limited to actions pursuant to the Civil Rights Act of 1964, or any other Federal Civil Rights Statute, the Age Discrimination in Employment Act of 1967, the rehabilitation act of 1973, or the Americans with Disabilities Act of 1990, or to contest the authority and jurisdiction of the Fire Department to impose the terms and conditions which are embodied in this Stipulation and Agreement.

ECF No. 111 at 26-27.  The second waiver in paragraph 11 of the Stipulation provides that Plaintiff

> hereby releases and discharges the City of New York, its agencies, officers, employees and agents, including the Department, from any and all liability, claims or causes of action arising under the laws of the United States, New York State, or New York City, including but not limited to the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the New York State Human Rights Law, and the New York City Human Rights Law, with respect to the matters addressed in this Stipulation and Agreement.

Id. at 27. Whereas the Agreement contains Plaintiff's release of "any and all liability, claims, or rights of action based on any act, omission, event or occurrence occurring from the beginning of the world up through and including the date hereof," namely September 30, 2021, ECF No. 108-1 at 6, 11, the end dates for the waivers in the Stipulation are unspecified, such that they would appear to be operative through at least the date of the execution of the Stipulation, which, at the earliest, would have been the date on which it was provided to Plaintiff, April 8, 2022. The Agreement does not contemplate the requirement that Plaintiff waive claims for nearly seven additional months beyond the waiver in the Agreement.

As to the distribution and availability of the Stipulation, paragraph 12 of the Stipulation provides "that executed copies of this Stipulation and Agreement will be distributed to the Chief of Department, the Chief of Operations, the Chief of Uniformed Personnel, Lieutenant Thomas's Borough Commander, Commanding Officer, union representative and/or attorney." Id. Paragraph 13 of the Stipulation further provides "[t]hat a copy of this Stipulation and Agreement shall be included in Lieutenant Thomas's personnel and ███████████, maintained by the Department in accordance with existing Department Rules and Regulations." Id. Whereas the Agreement provides that the "FDNY will only disclose and/or publish any information related to [P]laintiff's ██████████ set forth in this agreement in the ordinary course and in a manner consistent with its policies, practices, City policy and directive, and legal obligations or any other obligations" and states that Plaintiff would "not be identified by name" and instead "███████

██████████████████████████████ would "be done in the ordinary course and not in a manner intentionally seeking to single [P]laintiff out," and that the FDNY would "not publish ███████████████████████ n the Department Orders," ECF No. 108-1 at 7, the Stipulation contemplates that it will be provided to various members of the FDNY and included in Plaintiff's personnel and disciplinary files.  The confidentiality provisions in the Agreement afford specific protections to Plaintiff, including anonymization in certain contexts, that are not coextensive with the more general provisions in the Stipulation pertaining to the distribution and availability of the Stipulation.

In sum, the disparities between the terms of the Agreement and the terms of the Stipulation evidence that Plaintiff and Defendant did not have a meeting of the minds as to the terms of the Stipulation.

### d.    Payment To Plaintiff

The parties do not dispute that Defendant issued payment of the settlement amount to Plaintiff on December 10, 2021.  See ECF No. 109 at 5 (citations omitted); ECF No. 110 at 9 (citations omitted).  The Agreement required Plaintiff to

> execute and deliver to the City of New York's attorney (either by overnight delivery or email) at 100 Church Street, new York, New York 10007 all documents necessary to effect this settlement, including, without limitation, a General Release, based on the terms of paragraph '2' above, IRS Form W-9, and an Affidavit of Status of Liens,

and further provided that "City of New York's attorney shall make best efforts to transmit the relevant settlement documents to the New York City Comptroller's Office for processing within five (5) days of receipt by the City's counsel of the fully-executed documents necessary to effect this settlement."  ECF No. 108-1 at 9.  In view of Defendant's issuance of the payment of the settlement amount to Plaintiff on December 10, 2021, in the context of the aforementioned

13

provisions of the Agreement, Defendant recognized, through its actions in seeking to have, and in having, the New York City Comptroller's Office issue such payment that Defendant was in receipt of all documents necessary to effect the settlement.  For Defendant, on April 8, 2022, to then take the position that the Stipulation was necessary to effect the settlement is inconsistent with Defendant's course of performance of the Agreement.

In view of the foregoing, the Court finds that Plaintiff is not required under the Agreement to execute the Stipulation.  The motion to enforce the Agreement and require execution of the Stipulation should be denied as lacking in merit.

### D.    Whether Defendant Was Damaged As A Result Of Plaintiff's Breach

Defendant has not offered any damages resulting from Plaintiff's alleged breach and has therefore not satisfied this element of the claim.

## III.    CONCLUSION

For the reasons discussed above, the Court respectfully recommends that Defendant's motion be denied.

IV.    **OBJECTIONS**

Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen days of service.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and recommendation by both the District Court and the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022).

Dated:  Brooklyn, New York
        August 15, 2025

*Vera M. Scanlon*
        VERA M. SCANLON
        United States Magistrate Judge